GRAVES v. PINCHBACK, ADM., ETC., 'ET AL. ·

1. SLAVERY: *When abolished in Arkansas.*

The emancipation proclamation of President Lincoln had no legal efficacy in liberating slaves except so far as it was actually put in operation by the federal army in the field setting free captured slaves. The adoption of the constitution of 1864 is the true date of the liberation of slaves in this state.

2. TRUST: *Arising from conversion of infants' property.*

One who intermarries with the widow-administratrix of her deceased husband's ·estate stands *in loco parentis* to the infant heirs of the estate, and if he intermeddle with the assets, by converting them into other property in his own name, he will be held as a trustee for the heirs as to the property acquired by the conversion.

3. PARTIES: | *Action for property of a decedent.*

Although the debts of an estate have not been paid and there has been no final settlement of it, and notwithstanding the administrator is the proper party to sue for a conversion of the intestate's effects, his heirs cannot be forever kept out of their rights in the property by the neglect of the administrator, or of creditors, to enforce payment of their demands, but may sue for them.

APPEAL from *Lincoln* Circuit Court in Chancery.
Hon. W. M. HARRISON, Special Circuit Judge.

*J. M. Cunningham* for Appellants.

In this case the purchase was made in part by the grantee with the means of complainants, *without their consent*, and it is not necessary that the payment advanced should be an aliquot of the whole, or that there should be any intention of the parties to make the transaction a purchase in trust. By his wrongful intermeddling with complainant's property and assuming to act as a trustee, when the office did not belong to him, he has made himself a trustee *de son tort*, and may be called to account by the *cestuis que trust* for the assets received under the color of the trust. *Perry on Trusts, 265; Brown Stat. Frauds, 85–6; Perry on Trusts, 127, 128–9; 10 Hare, 209; 52 Me., 402; 14 Ill., 505; 57 Penn. Stat., 202; 57 Id., 247.*

One who purchases trust property, with notice of the trust, will stand in the shoes of the trustee and will be charged with the same trusts in respect of the trust property as the trustee from whom he purchased ; and likewise a volunteer, one who takes without the payment of a valuable consideration, either with or without notice of the trust, will be chargeable in the same way. *Perry on Trusts, 217; Hill on Trustees, 171; Wilson v. Mason, 1 Cranch, 45; Mechanics' Bk. v. Seton, 1 Pet., 229; McCall v. Harrison, 1 Brock, 330; Wormly v. Wormly, 8 Wheat., 421; Oliver v. Piatt, 3 How., 333; Caldwell v. Carrington, 9 Pet., 86; Ferrers v. Cherry, 2 Vern., 384; Jennings v. Moon, Ib., 609; Sanders v. Dehew, Ib., 271; Macreth v. Symmons, 15 Ves., 349; Daniels v. Davison, 16 Ves., 249; Le Neve v. Le Neve, 3 Atk., 646; Murray v. Ballou, 1 Johns. Ch., 566.*

Hydrick stood *in loco parentis* to the infant heirs, and one who intrudes himself upon, or intermeddles with an infant's estate, makes himself responsible. *Hempst., 225; 1 Atk., 544; Ib., 488; 3 Id., 130; 1 Vern., 296; 2 Id., 333; 2 Bro. C. C., 631; 6 Va., 88; 2 Keene, 722; 1 M. & Cr., 41; Story's Eq., 511; Co. Litt., 79; 6 Hare, 505; Perry on Trusts, 245; 1 Gill, 367; Hill on Trustees, 171.*

A resulting trust arose, and appellants could follow the trust fund into any new investment made, even into the hands of third parties. *2 M. & K., 655; 3 How., 333; 3 M. & S., 562.* They had a lien on the property purchased. *Perry on Trusts, 128; 2 Serg. & R., 529; 1 Rict. Chy., 126; Adams' Eq., 166 and note*; *Amb., 409; 17 Ves., 48.*

No fictitious value was placed on appellant's property. They furnished one-fourth of the purchase money of the land on a currency basis, and are entitled to have that amount refunded. *11 Vesey, 92; 13 Id., 407; Perry on Trusts, 470; Bespt. Eq., 42; Dorris v. Grace, 24 Ark., 326.*

The slaves were not emancipated by President Lincoln's proclamation. *24 Ark., 326; 26 Id., 24.* They were not, or at least there is no evidence that they were, within the lines over which the military power of the United States extended. *24 Ark., 330.*

*U. M. & G. B. Rose* and *D. H. Rousseau* for Appellees.

1. This is not a resulting trust. *Bisp. Eq., 1 ed., 79; Bigelow on Fraud, p. 109.* A party must pay an aliquot and defined portion of the purchase money, with the understanding that he is to have a definite interest. *14 Gray, 119; Bigelow on Fraud, p. 110; 30 Me., 121; 53 Me., 403.*

Hydrick stood in no trust relation to the property of Graves' estate. It was a *naked conversion*, in nowise involving a breach of trust. *Perry on Trusts, sec. 128; Id., sec. 135; 3 Edw. Chy., 583; 4 Humph., 233; 4 Ired. Eq., 94, reported 3 Battle's Dig., 572; 3 Sneed, 462; 40 Miss., 788.*

2. Plaintiffs being in possession of the land conveyed to their mother in payment of the property that went into the purchase, do not offer to return it. They do not offer to do equity, but seek to retain the advantage and escape the bur-

den. This they cannot do. *31 Ark., 154; 15 Id., 286; 17 Id., 606; 20 Id., 424; 25 Id., 204; 33 Id., 333; Bigelow Fraud, p. 410.*

3. Suit improperly brought. It could only be brought by the administrator. *42 Ark., 25; 8 Ark., 48; 21 Id., 62.*

4. Plaintiffs demand unconscionable. Mrs. Graves was entitled to her dower, though it was not allotted to her. *40 Ark., 393.*

5. Plaintiffs' slaves were put in at confederate money prices, and they can in no event recover more than their value in currency. *8 Wall., 1; 91 U. S., 3; 115 U. S., 566.*

6. The slaves were freed by the emancipation proclamation.

SMITH, J. Peyton Graves died intestate in the year 1861, in Desha county, the owner of five or six slaves and some other personal property, but of no lands. He left a widow and three infant children. The widow took administration upon his estate, and claims to the amount of $2000 were proved against it. Being administratrix she could not set out her own thirds in the personalty of which her husband died possessed. She therefore applied to the probate court for that purpose, and commissioners were appointed to make the allotment. What action, if any, was taken by these commissioners, does not appear. No report was filed by them, so far as the probate records show; and they, as well as the widow, are now all dead.

The widow, in 1862, was married to Hydrick. And in August, 1863, Hydrick purchased the Touchstone place, a body of lands mostly unimproved, containing 1278 acres. The consideration expressed in the deed he received was $13,700. The transaction is proved to have been made on the basis of confederate money, then much depreciated. In paying for the lands, Hydrick used two of the slaves, three oxen and one

wagon, which belonged to the Graves estate. Touchstone took the slaves at an estimated value of $1500 each, and the rest of the property is proved to have been worth, in confederate notes, from $300 to $500. Hydrick took the title to the lands in his own name, but subsequently conveyed one hundred and sixty acres of the tract to a trustee, who reconveyed to Mrs. Hydrick. The motive for this seems to have been that her means were used in the purchase of the property. The parcel settled on Mrs. Hydrick was the choicest and best improved part of the tract.

The accounts of the administratrix were never settled, and Graves' debts remain to this day mostly unpaid. No further administration was had, it being doubtless considered that the assets, consisting principally of slaves, had perished as a result of the war. At the death of Mrs. Graves, her children, being three by the first marriage and one by the last, inherited the land which was conveyed to her, and they are now in possession of it.

The heirs of Peyton Graves now filed their bill against Hydrick, and L. A. and X. J. Pindall, who had purchased some of the Touchstone lands under execution against Hydrick, to establish a resulting trust in the lands on account of their having been partially paid for with the property belonging to their father's estate. Their prayer is that Hydrick may be declared a trustee for them, and that he be charged with the value of the property so converted by him to his own use, and that the same may be declared a lien on the lands, paramount to the title of the Pindalls.

Hydrick died before answer filed, and the cause was revived against his administrator and heir. The suit was resisted on various grounds. And at the hearing the circuit court dismissed the bill.

Graves v. Pinchback, Adm., etc., et al.

In support of the decree it is argued that, at the date of this transaction, no property existed in slaves, by virtue of the emancipation proclamation of President Lincoln. But this was a .war measure, and could not *proprio vigore* alter the status of a slave, nor deprive the owner of his property. It had no legal efficacy except so far as it was actually put in operation by the armies in the field setting free captured slaves. The adoption of the constitution of 1864 is the true date of the liberation of the slaves in this state.

<div style="float:right">1. SLAVERY: When abolished in Arkansas.</div>

It is further urged that Hydrick sustained no fiduciary relation to the plaintiffs, or to the property of Graves' estate; that the property was not, as to him, trust property; and his sale of it was therefore a naked conversion, not a breach of trust. But-the·answer to this.is that the property belonged to the plaintiffs, subject to their · mother's rights and the payment of their father's debts; that Hydrick stood to them *in loco parentis;* and that he became a trustee by intermeddling with the property of these infants. *Story on Eq. Jur., sec. 511;· Lenox v. Notrebe, Hempst., 225; Van Epps v. Van Deusen, 4 Paige Chy., 64.*

<div style="float:right">2. TRUST:— Arising from conversion of infant's property.</div>

Although the evidence shows that the ancestor's debts have not been all paid and the affairs of the estate finally settled, and notwithstanding the administrator-is the proper party to sue for a conversion of the intestate's effects, heirs can not be forever kept out of their rights by the neglect of the administrator, or of creditors to enforce payment of their demands. *Mays v. Rogers, 37 Ark., 155; Stewart v. Smiley, 46 Id., 373.*

<div style="float:right">3. PARTIES:— In action for property of decedent.</div>

Upon the merits the decree does substantial justice. The slaves, oxen and wagon, which Hydrick put into the land trade did not probably exceed in value the share which the law provided for his wife out of the estate of her deceased husband. In that case a court of equity would set off her claim against the value of the property with which she was to be charged,

notwithstanding her dower may never have been formally as-signed. *Menifee v. Menifee, 8 Ark., 9; Trimble v. James, 40 Id., 393.*

Hydrick, then, has converted two slaves, in which his wife had only a life interest, the reversion belonging to the plaintiffs, into land. The slaves were a species of property that was about to perish. Hydrick has so arranged the title to a part of the land that, at his wife's death, it will descend to her children. And the shares of the plaintiffs are an ample equivalent for their interest in the slaves. The plaintiffs could not have been injured in any event. For, if the slaves had continued to be property, they would not have been bound by the disposition Hydrick made of them. But retaining the land, which represents their slaves, and not offering to surrender that, they seek to charge other lands, acquired in exchange, with a lien for the sum at which the negroes were estimated in confederate currency. It is evident that they are far more anxious to have equity done unto them than they are to do equity themselves.

Affirmed.